## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Derek Milosavljevic,

              Petitioner,

v.

JetSmarter, Inc.,

              Respondent.

19 CV 3317

## PETITION TO VACATE ARBITRATION AWARD

Derek Milosavljevic (Petitioner *pro se*)
jslitigation@gmail.com
7135 Hollywood Boulevard, Suite 707
Los Angeles, California  90046
Telephone: (323) 627-6766

Petitioner Derek Milosavljevic ("Petitioner"), appearing *pro se*, hereby petitions this Court, pursuant to Section 10 of the Federal Arbitration Act ("FAA") , 9 U.S.C § 10, to vacate two arbitration awards, which are the product of a secretive and collusive process, and which purport to deprive Petitioner and thousands of similarly-situated consumers across the country of their rights to seek redress through the courts or their own individual arbitrations, including a separate action brought by Petitioner and currently pending before the American Arbitration Association. Respondent is JetSmarter, Inc.

## PRELIMINARY STATEMENT

1.    This is an action under the FAA to vacate two stunningly overreaching arbitration awards by a Florida arbitrator purporting to certify a national class of more than 13,000 consumers for arbitration, and to preliminarily approve a settlement that would bind those absent class members, including Petitioner, despite clear and unambiguous language in the arbitration agreement expressly prohibiting her from doing so.

2.    The underlying arbitration, brought against Respondent JetSmarter, Inc. ("Respondent" or "JetSmarter") by just seven users of JetSmarter's services, Fred Michael Davis, Anne-Marie Van Der Velde, Howard Kahn, Robin Bader, Steven M. Nakash, Alison Nakash, and Shane Gallagher (collectively, the "Named Claimants"), alleges violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201, et seq., and similar laws of other states, unjust enrichment, and breach of contract.

1

3.     As explained more fully below, the combined Partial [Final] Award on Clause Construction as to Class Arbitration and Partial [Final] Award on Class Determination (collectively, the "Class Determination Award")[1]  (Ex. 1) and the Partial [Final] Award Granting Preliminary Approval of Class Arbitration Settlement (the "Class Settlement Award") (Ex. 2) were issued in brazen contravention of clear Supreme Court direction that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen S.A. v. Animalfeeds Intr.*, 559 U.S. 662, 684 (2010) (emphasis in original). Indeed, in this case, not only is there no contractual basis to conclude the thousands of non-Named-Claimant members of the putative class agreed to submit to class arbitration, the clear terms of the arbitration agreement on which the Awards purport to be based expressly prohibit class arbitration, and expressly disclaim any authority of an arbitrator to decide such claims. Because the Arbitrator's Class Determination Award and Class Settlement Award (collectively, the "Awards") were issued in manifest disregard of the law and the arbitration clause, and because the Arbitrator clearly exceeded her powers, the Awards must be vacated pursuant to 9 U.S.C. §§ 10(a)(4).

4.     What's more, the briefing, hearings, deliberations, settlement negotiations—and even the settlement agreement itself—leading to these Awards

---

[1]   The Class Determination Award omits the word "Final," but the American Arbitration Association Supplementary Rules for Class Arbitration (the "AAA Class Action Rules") pursuant to which the Class Determination Award purports to be issued require each of the Clause Construction Award and the Class Determination Award to be a "reasoned, partial final award." AAA Class Action Rule 3, 5.

that purport to bind Petitioner and thousands of other consumers were conducted in secret, in violation of the FAA, the rules of the American Arbitration Association (the "AAA"), and fundamental concepts of fairness and due process. Indeed, when Petitioner first learned of this nascent putative class action, he immediately contacted the Arbitrator through counsel and requested to be "included in all future emails, hearings, meetings, and filings in this case" and to be "provided with copies of all filings, transcripts, and written communications in this case." In response, the Arbitrator declared that Petitioner had "no right" to any such access until after she certified a class, and even then only if Petitioner chose not to "opt out" of the class.

5.     Of course, Petitioner and others who contractually disclaimed any authority of an arbitrator to preside over class actions have no obligation to "opt out" of her unauthorized orders; they have already done so expressly in the arbitration agreement. Moreover, by refusing Petitioner's request, and issuing the overreaching Awards purporting to determine class action availability, certifying class members and class counsel (chosen by Respondent), and approving a settlement without affording Petitioner and other absent class members any opportunity to present "evidence pertinent and material to the controversy," the Arbitrator has created independently sufficient grounds for vacatur under 9 U.S.C. § 10(a)(3).

6.     Accordingly, Petitioner respectfully requests this Court vacate the Awards because the Arbitrator exceeded her powers and manifestly disregarded the law by finding:

(i)     that she, not a court, had authority to decide the arbitrability and availability of a class action where the arbitration provision at issue provides that "[t]he arbitrator's authority to resolve and make written awards is limited to claims between JetSmarter and Member alone," and also provides that "[n]o arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.";

(ii)    that she had authority to issue a written award certifying a national class in an arbitration where the arbitration provision at issue provides that "[t]he arbitrator's authority to resolve and make written awards is limited to claims between JetSmarter and Member alone," and also provides that "[n]o arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.";

(iii)   that she had authority to preside over a national class action arbitration including absent and unnamed parties where the arbitration provision at issue provides that "[a]rbitration shall proceed solely on an individual basis without the right for any claims to be arbitrated on a class action basis";

(iv)    that she had the authority to issue an award preliminarily approving a settlement that purports to bind absent class members despite the arbitration provision at issue providing that "[t]he arbitrator's authority to

4

resolve and make written awards is limited to claims between JetSmarter and Member alone," and also provides that "[n]o arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.";

(v)      that despite her own acknowledgement that the arbitration provision at issue expressly prohibits class arbitrations, she may nonetheless preside over such a class arbitration based on her own policy determinations that such a class arbitration would protect class members, maintain farness, and promote efficiency.

7.      Alternatively, as independent and sufficient grounds to vacate the Awards, this Court may find that Arbitrator Leesfield's refusal of Petitioner's requests to participate and be heard prior to the issuance of the Awards constituted an improper refusal to hear "evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3).

## PARTIES

8.      Petitioner Derek Milosavljevic is an individual domiciled in Los Angeles, California.

9.      Respondent JetSmarter is a corporation organized under the laws of the State of Delaware. Its principle place of business is in Broward County, Florida. JetSmarter provides travel services to customers throughout the United States, Europe, and the Middle East.

## RELEVANT NON-PARTIES

10.     Ellen L. Leesfield ("Arbitrator Leesfield" or the "Arbitrator") is a resident of the State of Florida, and the arbitrator in AAA Arbitration No. 01-18-0003-3338, in which the Awards were issued.

11.     Fred Michael Davis is one of the Named Claimants in AAA Arbitration No. 01-18-0003-3338, and is a resident of the State of New Jersey.

12.     Anne-Marie Van Der Velde is one of the Named Claimants in AAA Arbitration No. 01-18-0003-3338, and is a resident of the State of Florida.

13.     Howard Kahn is one of the Named Claimants in AAA Arbitration No. 01-18-0003-3338, and is a resident of the State of New York.

14.     Robin Bader is one of the Named Claimants in AAA Arbitration No. 01-18-0003-3338, and is a resident of the State of New York.

15.     Steven M. Nakash is one of the Named Claimants in AAA Arbitration No. 01-18-0003-3338, and is a resident of the State of Florida.

16.     Alison Nakash is one of the Named Claimants in AAA Arbitration No. 01-18-0003-3338, and is a resident of the State of Florida.

17.     Shane Gallagher is one of the Named Claimants in AAA Arbitration No. 01-18-0003-3338, and is a resident of the State of New Jersey.

## JURISDICTION AND VENUE

18.     This is an action to vacate the Award pursuant to Section 10 of the FAA. This Court thus has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331.

19.    Venue is proper in the Southern District of New York because Respondent regularly conducts business in this District, and a substantial portion of the events giving rise to Petitioner's claims occurred in this District. Specifically, Petitioner used JetSmarter's services to book and travel on at least five cross-country flights from three different airports in California terminating in this District. Additionally, Petitioner used JetSmarter's services to travel on at least two helicopter flights between Westchester County Airport and Manhattan. According to JetSmarter's own calculations, more than a third of the value JetSmarter allegedly provided Petitioner stems from travel to or from this District. And Petitioner alleges that at least a third of the more than $2 million in damages he has suffered from JetSmarter's acts and omissions relates to such travel or promises about such travel.

## STATEMENT OF FACTUAL AND PROCEDURAL BACKGROUND

20.    JetSmarter owns and operates a business providing travel services to customers throughout the United States, Europe, and the Middle East. JetSmarter allows or allowed its customers to book seats on private planes and helicopters through its mobile application.

21.    Petitioner is a former JetSmarter customer. At the time Petitioner became a JetSmarter customer, most of JetSmarter's services were only available to those consumers who became a JetSmarter "member." On April 24, 2016, Petitioner became a JetSmarter member by paying a total of $13,175 for his first membership period.

7

22.    The Named Claimants are former JetSmarter members who each paid JetSmarter membership fees in amounts similar to or greater than the amounts paid by Petitioner.

## Petitioner's Action Against Respondent

23.    On May 14, 2018, Petitioner filed an action in the Superior Court of the State of California for the County of Los Angeles against JetSmarter, asserting violations of California's "Yelp" Law, Cal. Civ. Code § 1670.8, False Advertising Law, Unfair Competition Law, Consumer Legal Remedies Act, and for breach of contract and fraudulent inducement. Upon information and belief, Petitioner's lawsuit was the first publicly-filed consumer lawsuit against JetSmarter. Since that filing, at least 16 lawsuits by consumers against JetSmarter have been filed in or removed to federal court (12 of which remain pending) alleging substantially similar facts and bringing similar claims, including four matters currently pending in this district.[2]

24.    On May 17, 2018, Petitioner dismissed his Complaint against JetSmarter without prejudice, and on August 7, 2018 he re-filed his lawsuit (the "California Action") in the same court, alleging substantially identical facts and bringing substantially similar claims.

25.    In the California Action, JetSmarter moved to compel arbitration on the grounds of an arbitration provision contained in its online "Membership

---

[2]    *See Galvez v. JetSmarter, Inc. et al*, 1:18-cv-10311-VSB; *Worthington et al v. JetSmarter, Inc. et al*, 1:18-cv-12113-KPF; *Porcelli v. JetSmarter, Inc. et al*, 1:19-cv-02537-PAE; *Epstein v. JetSmarter, Inc. et al*, 1:19-cv-02977-GHW.

Agreement." For various reasons, Petitioner contested the enforceability of that arbitration agreement generally, as well as the delegation clause specifically, but the court in the California Action ruled that under the version of the Membership Agreement's arbitration clause (Section 18) submitted by JetSmarter, an arbitrator must decide the arbitrability of Petitioner's claims in the California Action. In California, a grant of a motion to compel arbitration is not immediately appealable but Petitioner intends to appeal that decision if necessary, at the appropriate time. An arbitrator in that matter has not yet been appointed.

### The Class Arbitration

26.     On September 5, 2018, nearly a month after Petitioner re-filed his Complaint against JetSmarter, the Named Claimants filed on behalf of themselves and a putative class and sub-classes (previously negotiated and agreed to by JetSmarter) a Demand for Class Arbitration (the Class Arbitration") with the AAA alleging claims substantially similar to those brought by Petitioner in the California Action.

27.     The Named Claimants filed the Class Arbitration on the basis of a nearly identical arbitration provision to the one submitted by JetSmarter in the California Action, which JetSmarter argues is binding and enforceable. JetSmarter and the Named Claimants "concede that Section 18 of the Membership Agreement entered into between JetSmarter and each [Named] Claimant and each [absent] class member contains a prohibition on class actions." Ex. 1, Class Determination Award at 5.

28.     In addition to the prohibition on the procedural mechanism of class actions in Section 18, which JetSmarter and the Named Claimants concede was entered into by every absent class member, including Petitioner, Section 18 also contains a limitation on the authority and jurisdiction of any arbitrator appointed. Specifically, Section 18 states that "[t]he arbitrator's authority to resolve and make written awards is limited to claims between Member and JetSmarter alone." Ex. 1, Class Determination Award at 5. Additionally, [n]o arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration." *Id.* at 5.

29.     According to the Class Determination Award,[3] prior to the filing of the Class Arbitration, JetSmarter and the Named Claimants entered to a contract (the "Class Agreement") in which JetSmarter agreed to waive the class action prohibition in Section 18, agreed to certification of a class and sub-classes, and agreed to the appointment of class counsel. Ex. 1, Class Determination Award at 2. Effectively, JetSmarter entered into an agreement whereby it purported to permit a class action, ***but only if it was permitted to choose the plaintiffs and lawyers litigating the case***. The Class Agreement has not been made public nor provided to Petitioner.

---

[3]     Much of the factual background presented in this Section has been obtained from the Awards, copies of which JetSmarter has attached to various public court filings, but have not been provided directly to Petitioner despite Petitioner's specific request to Arbitrator Leesfield for any written awards. Nor has the Award been posted to the AAA's Class Action Docket, despite its own rules requiring such awards to be made public.

30.   On October 19, 2018, JetSmarter and the Named Claimants jointly selected Ellen L. Leesfield (the "Arbitrator") as the arbitrator in the Class Arbitration.

31.   On November 26, 2018, JetSmarter and the Named Claimants purportedly submitted a Joint Brief in Support of Clause Construction Award on Class Arbitration and Class Determination Award (the "Joint Brief"). ***The Joint Brief has not been made public nor provided to Petitioner***.

32.   On or around December 11, 2018, Petitioner became aware of the Class Arbitration through review of JetSmarter's filings in other consumer lawsuits, and by review of the AAA's online Class Action Case Docket. Through reading the Named Claimants' Demand for Class Arbitration, (Ex. 3), Petitioner first learned that he was a member of the proposed class, which included "All persons who paid money to JetSmarter to obtain and/or renew a JetSmarter membership on or after September 5, 2014."

33.   Also on December 11, 2018, Petitioner's counsel in the California Action emailed the Arbitrator (Ex. 4) to identify Petitioner as a member of the proposed class, and to express the view that a determination on class certification outside of the presence and without the input of any other class members was improper, and to point out the asserted arbitration agreements cited by JetSmarter prohibited class action arbitrations. Petitioner's counsel also reminded Arbitrator Leesfield that under Rule 9 of the AAA's Supplementary Rules for Class Arbitrations, the "presumption of privacy and confidentiality in arbitration

proceedings shall not apply in class arbitrations," and that "in no event shall class members, or their individual counsel, if any, be excluded from the arbitration hearings[.]" Ex. 4. Accordingly, Petitioner's counsel demanded to be included on all future emails, hearings, meetings, and filings in the Class Arbitration, to be provided with copies of all filings, transcripts, and written communications in the Class Arbitration, and to stay the Class Arbitration. *Id.*

34.    In response to Petitioner's counsel's email, on December 21, 2018, Arbitrator Leesfield by letter (Ex. 5) refused Petitioner's requests to access to the case materials, and stated that unless and until Petitioner became part of the class by choosing not to opt out, Petitioner had no right of access or participation in the Class Arbitration.

35.    On February 7, 2019, Petitioner wrote to Arbitrator Leesfield personally by email (Ex. 6) and requested, pursuant to the AAA's Supplementary Rules for Class Arbitrations (the "AAA Class Action Rules"), "a copy of any and all awards issued to date in this case," including any "Clause Construction Award," (Rule 3), and any "Class Determination Award" (Rule 5) issued in the Class Arbitration. Petitioner reminded Arbitrator Leesfield that these awards "shall be publicly available, on a cost basis," (Rule 10(b)), and offered to pay any costs incurred. *Id.* The Arbitrator never responded to Petitioner's email. As of the date of this filing, the Award has not been posted on the AAA's Class Action Case Docket as is required by Rule 9(b) of the AAA Class Action Rules.

**The Class Determination Award**

36.     On February 19, 2019, Arbitrator Leesfield issued the Class Determination Award. In the Class Determination Award, the Arbitrator first concluded that the question of arbitrability was properly before her and not a court, and that "JetSmarter and each class member agreed to the arbitration provision, [and] that the arbitration provision is enforceable[.]" Ex. 1, Class Determination Award at 4-5.

37.     Arbitrator Leesfield concluded that the Class Arbitration was appropriate based on the arbitration provision notwithstanding the express class action prohibition in Section 18, because JetSmarter waived that provision—which she found was included for *JetSmarter's* benefit—and because of her conclusion that class members would be protected and treated fairly, be provided with notice and the opportunity to opt out, and that a class proceeding will promote efficiency and "benefit" the absent class members. Ex. 1, Class Determination Award at 5-11.

38.     In the Class Determination Award, Arbitrator Leesfield also defined the members of the class to be bound, as well as three sub-classes. The full class, according to the Award, was defined as "All persons who were or became JetSmarter members on or after September 5, 2014, and prior to June 19, 2018, excluding all those who previously executed a valid release of liability in favor of JetSmarter." *Id.* at 17. In addition, Arbitrator Leesfield defined three sub-classes, depending on the date of a member's JetSmarter membership termination. *Id.* Petitioner was purportedly included in sub-class 2, defined as "All members who

13

were or became JetSmarter members as of January 1, 2017, who ceased being members prior to June 18, 2018[.]" *Id.*

### The Class Settlement Award

39.     On March 19, 2019, Arbitrator Leesfield issued the Class Settlement Award, Ex. 2. In that Award, the Arbitrator purported to preliminarily approve a privately-negotiated settlement, purportedly dated March 7, 2019 (*id.* at 1) between JetSmarter and the Named Claimants (whom JetSmarter hand-picked). ***The actual settlement agreement has not been made public, and Petitioner has not seen or reviewed a copy.*** The financial part of the settlement purportedly consists of a pool of $3,125,000 (less costs and fees of class counsel and the settlement administrator of up to $150,000), to be solely distributed to members of subclass 3, which is defined as "all persons who were members of JetSmarter as of June 18, 2018." Ex. 2, Class Settlement Award at 3-5; Ex. 1, Class Determination Award at 17. As a member of "subclass 2," Petitioner would not be entitled to any financial compensation under the Awards.

40.     The Class Settlement Award also sets aside $3,125,000 in fees to be applied for by class counsel (whom JetSmarter hand-picked), in addition to the up to $50,000 in costs class counsel is entitled to draw from the pool otherwise allotted to subclass 3 members. Ex. 2, Class Settlement Award at 5.

41.     Attached as Exhibit A to the Class Settlement Award is a Class Arbitration Settlement Notice (the "Class Notice"), which Arbitrator Leesfield also purported to approve. Ex. 2, Class Settlement Award at 5-6. According to the Class Settlement Award and the Class Notice, a purported class member is automatically

a member of the class and will remain so and will be bound by Arbitrator Leesfield's rulings and the settlement unless they affirmatively opt out within 45 days, "even if they have filed, or already have a separate pending claim, action, or arbitration against Respondent." *Id.* at 5.

42.    Specifically, the Class Settlement Award purports to institute an automatic stay, preventing any class member from filing, or even continuing to prosecute any action or arbitration against JetSmarter unless he or she affirmatively opts out of the Class Arbitration within 45 days. *Id.* at 6-7.

43.    Notably, according to the Class Settlement Award, under the purported (and secret) settlement agreement, JetSmarter is required to make "significant changes to the terms of JetSmarter membership addressing the alleged deceptive trade practices set forth in the Demand for Class Arbitration." *Id.* at 4. But nothing in the Class Settlement Award or the Class Notices explains what any such changes are. And again, ***the terms of the purported settlement agreement have not been provided to Petitioner or made public***.

### Respondent's Attempt To Enforce An Automatic Stay

44.    On March 29, 2019, JetSmarter's counsel emailed the AAA administrator responsible for the separate action between Petitioner and JetSmarter, to give notice of the Class Settlement Award, whereafter Petitioner reviewed it for the first time. JetSmarter's counsel's filing also purported to give notice to the AAA of "the provisions prohibiting Class Members (including Petitioner) from pursuing his or her individual claims during the notice period." Ex. 7.

45.     Again, by email dated April 8, 2018 to the AAA administrator, JetSmarter's counsel asserted that Petitioner's arbitration was subject to an automatic stay, as "all Class Members are essentially enjoined from continuing to prosecute independent claims under the notice period, unless the member formally opts-out of the class and complies with the process for doing that, as established by the Partial Award." Ex. 8.

## GROUNDS FOR VACATUR

### Legal Standard for Vacating an Arbitration Award

46.     The "review of arbitration awards is generally governed by the FAA." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 201 (2d Cir. 1998) (holding arbitrators manifestly disregarded the law). Under the FAA, an award should be vacated where the arbitrator has acted "outside the scope of his contractually delegated authority." *Oxford Health Plans LLC V. Sutter*, 569 U.S. 564, 569 (2013); see also 9 U.S.C. § 10(a)(4). Pursuant to the FAA, a district court should vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). *See also Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (arbitration award may be vacated where the arbitrator "strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice").

47.     Arbitrators exceed their powers when their awards do not draw their essence from the underlying agreement to arbitrate. See *Reliastar Life Ins. Co. of NY v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (citing *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005)). "While a broad arbitration clause affords arbitrators considerable discretion …, they may not 'exceed the power

granted to them by the contract itself.'" *Reliastar*, 564 F.3d at 87-88 (quoting *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003)).

48.     In this Circuit, "an arbitration award may be vacated if it is in 'manifest disregard of the law." *Halligan*, 148 F.3d at 202.   Manifest disregard "means more than error or misunderstanding with respect to the law." *Id.* "To modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Id.* Manifest disregard often involves "an arbitral decision that exceeded the legal powers of the arbitrators." *See Duferco Int'l Steel Trading v. Klaveness Shipping*, 333 F.3d 383, 389 (2d Cir. 2003) (noting most Second Circuit cases finding manifest disregard are where arbitrators exceeded their powers).

### The Awards Should Be Vacated Because The Determination Of Class Action Arbitrability Is A Question For The Court.

49.     As an initial matter, the question of whether a class action was arbitrable here should have been decided by the Court. "[W]hether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters et al.*, 561 U.S. 287, 296 (2010) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

50.     Although the Supreme Court in *Stolt-Nielsen* left open the specific question of whether the availability of class action was a "gateway" issue to be

17

decided by the court and not an arbitrator (548 F.3d at 679-80, explaining that the plurality opinion in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 did not decide the question), every United States Court of Appeals to have considered the question has concluded that it is an issue of arbitrability for the courts to decide. *See Herrington v. Waterstone Mortg. Corp.*, 907 F. 3d 502, 507 (7th Cir. 2018); *Del Webb Cmties., Inc. v. Carlson*, 817 F.3d 867, 877 (4th Cir. 2016); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013); *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017); *JPay, Inc. v. Kobel*, 904 F.3d 923, 930 (11th Cir. 2018); see also *Eshagh v. Terminix Int'l Co.*, 588 F. App'x 703, 704 (9th Cir. 2014) (unpublished).

51.    In addition to this mountain of persuasive authorities, the Supreme Court has explicitly held that questions of arbitrability generally are gateway questions to be decided by a court and instructed that courts "should not assume that the parties agreed to arbitrate arbitrability *unless there is clear and unmistakable evidence that they did so.*" *First Options of Chicago, Inc. v. Kaplan*, 514 U. S. 938, 944 (1995) (emphasis added). In this case, if anything is clear and unmistakable it is that Petitioner and the other absent class members did not agree to delegate such a decision to the arbitrator.

52.    Although the arbitration provision provided by the Named Claimants and JetSmarter and relied on by Arbitrator Leesfield purports to grant the arbitrator the authority to decide most disputes between JetSmarter and its consumers, including "the validity of [the arbitration] clause," the Supreme Court

has explained that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Stolt-Nielsen*, 559 U.S. at 685.

53. In this case, the Arbitrator's authority is limited by the arbitration provision's express prohibition: "[t]he arbitrator's authority to resolve and make written awards is limited to claims between JetSmarter and Member alone." Ex. 1, Class Determination Award at 5. Accordingly, the arbitration agreement purportedly relied on by Arbitrator Leesfield does not clearly and unmistakably delegate the determination about class action availability to her, and such a determination must be made by a court.

### The Arbitrator's Attempts to Exercise Jurisdiction Over Nonconsenting Parties Exceeded Her Powers, And The Awards Must Be Vacated.

54. The Supreme Court has repeatedly explained that "arbitration is simply a matter of contract between the parties." *First Options of Chicago*, 514 U.S. at 943. And as with any contract, arbitration "is a matter of consent, not coercion," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). The "central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen*, 559 U.S. at 682 (quoting *Volt* at 479); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57-58 (1995); *see also Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 688 (1996).

55. This rule is fully applicable in the class action context. The Supreme Court has admonished that "a party may not be compelled under the FAA to submit

to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen*, 559 U.S. at 684 (emphasis in original).

56.     In *Stolt-Nielsen*, the question before the Supreme Court was "whether imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the Federal Arbitration Act (FAA)[.]" *Id.* at 666. In answering "no" to that question, the Court rejected the view of the arbitration panel that the "critical point" supporting the availability of class arbitration "was that petitioners did not 'establish that the parties to the charter agreements intended to preclude class arbitration.'" *Id.* at 684 (emphasis in original). The Court explained that the panel's equation of silence with agreement was "fundamentally at war with the foundational FAA principle that arbitration is a matter of consent." *Id.*

57.     But in this case, Arbitrator Leesfield's Awards bring that quixotic war to distant fronts even the *Stolt-Nielsen* arbitrators would not have dared to breach. As the Class Determination Award, JetSmarter, and the Named Claimants all acknowledge, the arbitration provision at issue in this case does establish the parties intended to preclude class arbitration:

> The Parties concede that Section 18 of the Membership Agreement entered into between JetSmarter and each Claimant, and between JetSmarter and each class member, contains a prohibition on class actions.

Ex. 1, Class Determination Award at 5. By disregarding that clear prohibition, Arbitrator Leesfield acted in manifest disregard of the law by "stray[ing] from interpretation and application of the agreement and effectively dispens[ing] h[er]

own brand of industrial justice." *Stolt-Nielsen*, 559 U.S. at 671. The Awards must be vacated.

### The Arbitrator's Attempts To Justify Disregarding The Contract Are Impermissible And Baseless.

58.     After acknowledging that the express terms of the arbitration agreement and the parties' clear intentions prohibit class arbitration, the Award nonetheless attempts to justify Arbitrator Leesfield's improper usurpation of jurisdiction. Arbitrator Leesfield's justifications are both legally impermissible, and demonstrably wrong.

58.     According to the Class Determination Award, a class action was appropriate here despite the existence of the class action prohibition and the express contractual denial of her authority to resolve any class claims, (1) because JetSmarter waived those provisions, which she determined were included for JetSmarter's benefit; (2) because of her belief that class members would be protected and treated fairly (by her); (3) because they would be provided with notice and the opportunity to opt out; and (4) because a class proceeding would "promote efficiency," and "benefit" the absent class members. Ex. 1, Class Determination Award at 5-11.

59.     As an initial and dispositive matter, Arbitrator Leesfield's brazen disregard for the terms of the arbitration provision in favor of her own judgment about what is best for the class, was the very type of policy judgment squarely identified by the Supreme Court in *Stolt-Nielsen* as grounds for vacatur. In that case, like here, the arbitration panel "proceeded as if it had the authority of a

common-law court to develop what it viewed as the best rule to be applied" despite "the absence of express consent[.]" *Stolt-Nielsen* at 674-75. The Court explained that in such a situation "an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator 'exceeded [his] powers,' for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." *Id.* at 672. Accordingly, in the face of the absent class members' clear refusal to consent to the class action vehicle and her jurisdiction, Arbitrator Leesfield's opinions that a class action would benefit and protect Petitioner and the other absent class members are impermissible and her Awards must be vacated.

60.     What's more, Arbitrator Leesfield's justifications and her "view[s] of sound policy regarding class arbitration," *id.* at 672, are simply baseless. Most notably, the Class Determination Award's conclusion that because the class action prohibition was "drafted by JetSmarter, for the benefit of JetSmarter," Ex. 1, Class Determination Award at 7, it could thus be unilaterally waived as against more than 13,000 absent class members is remarkable in its wrongheadedness, and an excellent demonstration of why the rights of thousands of nonconsenting consumers nationwide cannot be left in the hands of an unapproved arbitrator whose rulings are subject to extreme deference under the FAA.

61.     To be sure, Petitioner does not doubt that JetSmarter intended the inclusion of the class action prohibition in its adhesion contracts to shield it from liability, since consumers might decline to bring small-value claims on an individual basis. But now facing dozens of high-value lawsuits from its customers and former

customers (including Petitioner's claims for at least $2,000,000), JetSmarter cannot unilaterally waive that prohibition in order to use class action procedures as a sword to cut off potential liability from future suits. Indeed, if such unilateral power were expressly included in the contract, there is little doubt that such a provision would be deemed either illusory or unconscionable under the laws of most, if not all states.

62.     Likewise, the Arbitrator's conclusion that a class action should proceed here because absent class members will be "protected," "benefit," and be "treated fairly" are belied by the facts, including the Class Settlement Award and the underlying settlement agreement which was negotiated, preapproved, and remains in secret. Indeed, it is hard to imagine how this mysterious settlement could be perceived to benefit the absent class members when the total amount earmarked for more than 13,000 class members is just $3,125,000. In comparison, there are currently at least 12 pending federal lawsuits against JetSmarter—including four in this district—by absent class members, each asserting diversity jurisdiction and thus seeking at least $75,000, half of which are claiming at least $600,000 in damages, and a full third of which are seeking more than $1 million. And that number does not include an untold number of actions filed in state courts or individual arbitration actions, including Petitioner's in which he is seeking not less than $2 million.

63.     In just the past 45 days alone, three consumer lawsuits against JetSmarter have been filed in or removed to federal courts around the country, and

it is fair to assume many others are considering bringing suit, or have not yet become aware they have viable claims. But under the Class Settlement Award, these more than 13,000 consumers are purportedly barred from filing any claim during the "automatic stay," and would forever waive all claims unless they opt out within 45 days of notice of the illegitimate Class Settlement Award being mailed. Indeed, not only does the Class Settlement Award purport to divest absent members of any right to future claims against JetSmarter if he or she does not opt out, unless a class member fills out a claim form within 45 days, neither does her or she have the right to any of the settlement benefits. Ex. 2, Class Settlement Award, Settlement Notice.

64.    In sum, stripping thousands of consumers of their rights to seek redress—potentially worth hundreds of thousands or millions of dollars each—from the courts in a hurriedly-approved, collusive settlement agreement issued by an arbitrator whom those absent class members expressly agreed could not bind them, can hardly be said to protect them, benefit them, or treat them fairly. Indeed, the Awards prove true the Supreme Court's view that it is "at the very least odd to think that an arbitrator would be entrusted with ensuring that third parties' due process rights are satisfied." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 349 (2011).

### The Arbitrator's Attempt To Exert Authority Over Non-consenting Parties Violates Fundamental Principles Of Fairness and Due Process.

65.    As for Arbitrator Leesfield's belief that the absent class members are being protected because they are being given the opportunity to opt out, this

justification too, fails. As Justice Alito explained in his concurrence in *Oxford Health Plans LLC v. Sutter*, "an arbitrator's erroneous interpretation of contracts that do not authorize class arbitration cannot bind someone who has not authorized the arbitrator to make that determination." 569 U.S. 564, 574 (2013) (Alito, J. concurring).

66.     This rule of course, applies with even more force to an arbitrator's decision to disregard a contract that prohibits class arbitration:

> The distribution of opt-out notices does not cure this fundamental flaw in the class arbitration proceeding in this case. Arbitration is simply a matter of contract between the parties, and an offeree's silence does not normally modify the terms of a contract. Accordingly, at least where absent class members have not been required to opt in, it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to decide on a classwide basis which arbitration procedures are to be used.

*Id.*

67.     One court in this district has applied Justice Alito's concurrence in *Sutter* to preclude an arbitral award that "certifies a class that includes individuals who have not affirmatively opted in to the arbitral proceedings." *Jock v. Sterling Jewelers, Inc.*, 284 F.Supp.3d 566, 571 (S.D.N.Y. Jan. 15, 2018). In vacating the arbitral award in *Jock*, Judge Rakoff rejected Plaintiffs' contention that an Arbitrator could permissibly certify a class of thousands merely "because the named plaintiffs and the defendant submitted the question of whether the [] agreement allowed for class procedures to the Arbitrator." *Id.* at 570.

68.     Judge Rakoff explained that such a view "overlook[s] the fact that, unlike the named plaintiffs and defendants, these 'absent members of the plaintiff class [who have not chosen to opt-in to the class] have not submitted themselves to the Arbitrator's authority 'in any way.'" *Id.* at 570 (quoting *Sutter*, 569 U.S. at 574 (Alito, J., concurring)). Because neither the FAA nor Article III authorize private citizen arbitrators "power to bind individuals and businesses except in so far as [they] . . . have bound themselves," the District Court held the Arbitrator had exceeded her authority by purporting to do just that. *Id.* at 571.

69.     It must be recognized that comparatively, *Sutter*, *Stolt-Nielsen*, *Volt Information Sciences, Inc.*, and *Jock* were much more difficult cases than that presented here. In each of those cases, the arbitration provision at issue did not explicitly address whether class actions were available. No such ambiguity is present here. As the Class Determination Award explicitly acknowledges, "The Parties concede that Section 18 of the Membership Agreement entered into between JetSmarter and each Claimant, and between JetSmarter and each class member, contains a prohibition on class actions." Class Determination Award at 5. In this case, vacatur of the Awards purporting to bind absent class members is required under the Supreme Court's clear direction that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam*, 537 U.S. at 83.

70.     Finally, in a valiant effort to find at least *some* precedential support for her jurisdictional power grab, Arbitrator Leesfield cites a trial court order from the

Northern District of California, which the Class Determination Award claims "support[s] JetSmarter's ability to waive the class prohibition set forth in the Membership Agreement." Ex. 1, Class Determination Award at 8, citing *Jabbari v. Wells Fargo & Co.*, 15-cv-02159-VC, 2017 WL 5157608, at *1, 2, 5 (N.D. Ca. July 8, 2017). Assuming arguendo that non-binding, out-of-circuit order stood for the proposition she claims—and it does not—Arbitrator Leesfield's citation thereto still evinces her fundamental misunderstanding of her role as an arbitrator. The determinations in that case were made by a United States District Court, after voluminous public briefing and multiple hearings. Arbitrator Leesfield, however, is not currently, nor has she ever been, a federal judge.

71.    As the Supreme Court has explained:

> A proper conception of the arbitrator's function is basic. He is not a public tribunal imposed upon the parties by superior authority . . . . He has no general charter to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties.

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581 (1960) (emphasis added). On the other hand, Judge Chhabria of the United States District Court for the Northern District of California was appointed by the President of the United States and confirmed by a vote of the United States Senate pursuant to Article III of the U.S. Constitution.

72.    Moreover, as the Supreme Court's opinion in *Concepcion* explained, "Arbitration is poorly suited to the higher stakes of class litigation. In litigation, a defendant may appeal a certification decision on an interlocutory basis and, if

unsuccessful, may appeal from a final judgment as well. Questions of law are reviewed de novo and questions of fact for clear error." *AT&T Mobility LLC v. Concepcion*, 563 US at 350. Contrast this with arbitration, where, under 9 U. S. C. §10, a court may vacate an arbitral award only on a few specified grounds, including, of course, as here where the arbitrator exceeded her powers. And while the AAA rules "do authorize judicial review of certification decisions, [] this review is unlikely to have much effect given these limitations; review under §10 focuses on misconduct rather than mistake. And parties may not contractually expand the grounds or nature of judicial review." *Concepcion*, at 350. In short, both an arbitrator's authority, and the review of her decisions, are limited, and the ability of an Article III court to bind absent parties is of little if any relevance to the extent of an arbitrator's power.

### The Arbitrator's Refusal To Permit Petitioner To Participate And Be Heard Constitutes Grounds For Vacatur Under the FAA.

73.    As separate and independently sufficient grounds, the Awards may and should be vacated because of Arbitrator Leesfield's refusal to allow Petitioner or his counsel participate in the secret hearings and briefing that led to hastily-issued certification and settlement Awards.

74.    Under 9 U.S.C. § 10(a)(3), a federal court "may vacate an arbitration award if 'the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy[,] or of any other misbehavior by which the rights of the party have been prejudiced.'" *Tempo Shain Corp. v. Bertek, Inc.*, 120 F. 3d 16 (2d

Cir. 1997) (vacating an award where the arbitral panel closed the hearing without permitting a party's intended witness to testify). And although an arbitrator is not required under the FAA to "follow all the niceties observed by the federal courts," *Bell Aerospace Co. Div. of Textron v. Local 516*, 500 F.2d 921, 923 (2d Cir. 1974), she must "give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Tempo Shain Corp.*, 120 F.3d at 20 (quoting *Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985)).

75.     In this case, promptly after learning he was included in a putative class, and that settlement negotiations were ongoing, Petitioner, through counsel, requested to be included on all future emails, hearings, meetings, and filings in the arbitration. Ex. 4. The Arbitrator flatly refused this request. Ex. 5. Later, Petitioner emailed Arbitrator Leesfield directly, and requested a copy of all awards issued in the arbitration. Ex. 6. This email the Arbitrator wholly ignored, despite her obligation under the AAA's rules to provide such awards, and even to post them publicly on the AAA's website.[4]  Indeed, as of the date of this filing, the Awards still have not been publicly posted on the AAA's website as required by the its own rules.

76.     If Arbitrator Leesfield had complied with her obligations under the FAA and AAA's own rules, Petitioner would have had the opportunity to present, not just to the Arbitrator, but to Respondent's and the Named Claimant's counsel,

---

[4]     *See AAA Supplementary Rules for Class Arbitrations*, Rule 9(b)(4) ("The AAA shall maintain on its website a Class Arbitration Docket of arbitrations filed as class arbitrations. The Class Arbitration Docket will provide certain information about the arbitration to the extent known to the AAA, including: a list of awards made in the arbitration by the arbitrator"); Rule 10(b) ("All awards rendered under these Supplementary Rules shall be publicly available, on a cost basis.").

argument and facts showing that any class certification or settlement in this arbitration cannot, under clear precedent bind absent parties including Petitioner.

77.     Instead, Arbitrator Leesfield asserted that Petitioner had "no standing," and "no right" to participate in the secret proceedings which resulted in a swift $3.125 million proposed settlement, and a tidy set-aside of another $3.125 for the "Class Counsel" that has been colluding with Respondents since before the arbitration demand was even filed.[5]

78.     Yet, according to the Class Settlement Award, despite having no right to participate or see how this rotten sausage was made, Petitioner is now a member of the class, and unless he opts out within 45 days of the postmark date of the "Class Notice," he will be forever bound by the terms of this collusive settlement. Ex. 2, Settlement Notice. Indeed, Respondent JetSmarter has now twice asserted to the AAA that Petitioner's separate action against JetSmarter—first filed California state court more than 10 months ago—is automatically stayed, and must be dismissed unless Petitioner opts out within the notice period. Exs. 7, 8.

79.     These overreaching Awards, issued after a collusive and secretive negotiation process, excluded the absent class members, including Petitioner, who never authorized or consented to be bound by such a process to begin with. The

---

[5]     According to the Class Determination Award, JetSmarter and the Named Claimants entered into a secret "Class Agreement" prior to the Named Claimants filing their demand for arbitration, and prior to their selection of the Arbitrator. Ex. 1, Class Determination Award at 2-3. And by no later than October 24, 2018, JetSmarter employees had begun directing complaining customers to their purported adversaries' counsel for representation in this putative class action. Ex. 9. The goal here was clear: JetSmarter and class counsel would collude to obtain a quick settlement that would cut off potentially massive liability for JetSmarter in exchange for a quick and easy payday for class counsel. Unless this Court vacates the Awards, that goal will have been realized, with $3,125,000 set aside for class counsel for just six months of "work."

Arbitrator's refusal to permit Petitioner or any other absent purported class member to be heard is a textbook example of improper refusal to hear evidence "pertinent and material to the controversy," 9 U.S.C. § 10(a)(3). On this ground too, the Awards must be vacated.

## **PRAYER FOR RELIEF**

80.     Petitioner re-alleges paragraphs 1-79 as if set forth fully herein.

81.     Petitioner petitions to vacate the Class Determination Award and the Class Settlement Awards on the grounds that in issuing the Awards, the Arbitrator exceeded her authority, exhibited manifest disregard for the law and contract, and because she refused to hear pertinent and material evidence, depriving Petitioner of his rights to due process and fundamental fairness.

82.     WHEREFORE, in light of the foregoing and pursuant to the FAA, 9 U.S.C. § 10, Petitioner respectfully requests the Court vacate the Awards, remand to the Arbitrator with instructions to limit any future awards to the named parties before her, and require Respondent to issue corrective notices to purported class members informing them they are not bound by the Awards nor by any opt-out notices or claim forms such purported class members may have sent in response to those Awards.

Dated:     April 10, 2019

Derek Milosavljevic
7135 Hollywood Blvd., Ste. 707
Los Angeles, California  90046

*Pro Se Petitioner*

JS 44C/SDNY
REV. 06/01/17

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**PLAINTIFFS**

Derek Milosavljevic

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER**
None (Pro Se) 7135 Hollywood Blvd., Ste. 707, Los Angeles, CA 90046
323-627-6766

**DEFENDANTS**

Jetsmarter, Inc.

**ATTORNEYS (IF KNOWN)**

RECEIVED SDNY PRO SE OFFICE
2019 APR 12 PM 12: 21
S.D. OF N.Y.

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Petition to Vacate Arbitration Award under 9 U.S.C. § 10.

Judge Previously Assigned

Has this  action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No [✓] Yes [ ]

If yes, was this case   Vol. [ ]   Invol. [ ]   Dismissed.   No [ ]   Yes [ ]   If yes, give date _____ & Case No. _____

IS THIS AN INTERNATIONAL ARBITRATION CASE?        No [x]        Yes [ ]

*(PLACE AN [x] IN ONE BOX ONLY)*        NATURE OF SUIT

### TORTS

**CONTRACT**

[ ] 110   INSURANCE
[ ] 120   MARINE
[ ] 130   MILLER ACT
[ ] 140   NEGOTIABLE INSTRUMENT
[ ] 150   RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151   MEDICARE ACT
[ ] 152   RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153   RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160   STOCKHOLDERS SUITS
[ ] 190   OTHER CONTRACT
[ ] 195   CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**REAL PROPERTY**

[ ] 210   LAND CONDEMNATION
[ ] 220   FORECLOSURE
[ ] 230   RENT LEASE & EJECTMENT
[ ] 240   TORTS TO LAND
[ ] 245   TORT PRODUCT LIABILITY
[ ] 290   ALL OTHER REAL PROPERTY

**PERSONAL INJURY**

[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY
[ ] 362 PERSONAL INJURY - MED MALPRACTICE

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**

[ ] 440   OTHER CIVIL RIGHTS (Non-Prisoner)
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING/ ACCOMMODATIONS
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446   AMERICANS WITH DISABILITIES -OTHER
[ ] 448 EDUCATION

**PERSONAL INJURY**
[ ] 367 HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**

[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING

[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**PRISONER PETITIONS**
[ ] 463 ALIEN DETAINEE
[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER

**PRISONER CIVIL RIGHTS**

[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION
[ ] 560 CIVIL DETAINEE CONDITIONS OF CONFINEMENT

**FORFEITURE/PENALTY**

[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 690 OTHER

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATION
[ ] 840 TRADEMARK

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 740 RAILWAY LABOR ACT
[ ] 751 FAMILY MEDICAL LEAVE ACT (FMLA)
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT (ERISA)

**IMMIGRATION**
[ ] 462 NATURALIZATION APPLICATION
[ ] 465 OTHER IMMIGRATION ACTIONS

**BANKRUPTCY**
[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**SOCIAL SECURITY**
[ ] 861 HIA (1395ff)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 TAXES (U.S. Plaintiff or Defendant)
[ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**
[ ] 375 FALSE CLAIMS
[ ] 376 QUI TAM
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV

[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE

[ ] 890 OTHER STATUTORY ACTIONS
[ ] 891 AGRICULTURAL ACTS

[ ] 893 ENVIRONMENTAL MATTERS
[ ] 895 FREEDOM OF INFORMATION ACT
[x] 896 ARBITRATION
[ ] 899 ADMINISTRATIVE PROCEDURE ACT/REVIEW OR APPEAL OF AGENCY DECISION

[ ] 950 CONSTITUTIONALITY OF STATE STATUTES

*Check if demanded in complaint:*

[ ]  CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ _____   OTHER _____

*Check YES only if demanded in complaint*
JURY DEMAND: [ ] YES [x] NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.
AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?
IF SO, STATE:

JUDGE _____   DOCKET NUMBER _____

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

*(PLACE AN  x  IN ONE BOX ONLY)*                                    **ORIGIN**

[x] 1 Original Proceeding  [ ] 2 Removed from State Court  [ ] 3 Remanded from Appellate Court  [ ] 4 Reinstated or Reopened  [ ] 5 Transferred from (Specify District)  [ ] 6 Multidistrict Litigation (Transferred)  [ ] 7 Appeal to District Judge from Magistrate Judge

[ ] a. all parties represented

[x] b. At least one party is pro se.

[ ] 8 Multidistrict Litigation (Direct File)

*(PLACE AN  x  IN ONE BOX ONLY)*          **BASIS OF JURISDICTION**          ***IF DIVERSITY, INDICATE CITIZENSHIP BELOW.***

[ ] 1 U.S. PLAINTIFF   [ ] 2 U.S. DEFENDANT   [x] 3 FEDERAL QUESTION (U.S. NOT A PARTY)   [ ] 4 DIVERSITY

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ]1 | [ ]1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ]3 | [ ]3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ]5 | [ ]5 |
| CITIZEN OF ANOTHER STATE | [ ]2 | [ ]2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ]4 | [ ]4 | FOREIGN NATION | [ ]6 | [ ]6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS UNKNOWN

REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

**COURTHOUSE ASSIGNMENT**

I hereby certify that this case should be assigned to the courthouse indicated below pursuant to Local Rule for Division of Business 18, 20 or 21.

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   [ ] WHITE PLAINS   [x] MANHATTAN

DATE 4/10/2019          SIGNATURE OF ATTORNEY OF RECORD (PRO SE)

RECEIPT #

ADMITTED TO PRACTICE IN THIS DISTRICT
[x] NO
[ ] YES (DATE ADMITTED  Mo. _____  Yr. _____)
Attorney Bar Code #

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

"MONEY"

THE UNITED STATES DISTRICT COURT
RM FOLEY SQ
NEW YORK NY 10007

P.PURPLE S. FBNT
A18-2000

1:028
1600

12xWed14-13H005
VIP 9128 13
22xRd1414 8013
9128

DEREK MILOSAVLJEVIC
(323) 627-6766
10001 CORAL SANDS DR
LAS VEGAS NV 89117

8 LBS          1 OF 1
SHP WT: 8 LBS
DATE: 11 APR 2019

SHIP PRO SE INTAKE UNIT
TO: THE UNITED STATES DISTRICT COURT
    RM 105
    40 FOLEY SQ

NEW YORK NY 10007-1502

NY 102 9-10

UPS NEXT DAY AIR SAVER     1P

TRACKING #: 1Z W89 R44 13 8055 8129

BILLING: P/P

USM40LD
SDNY

1SH 13.00N 2A300 99/5U 01/2019

SEE NOTICE ON REVERSE regarding UPS terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.